**UNITED STATES of America,**
Appellee,

v.

**Carlos PACHECO, Defendant–Appellant.**

No. 00–1015.

United States Court of Appeals,
Second Circuit.

Argued: June 22, 2000

Decided: Aug. 29, 2000

**149**

In the case before us, we deal with the question of whether Congress can make the word "misdemeanor" mean "felony." As will be seen, we hold that it can, because in this instance, we consider Congress "to be master—that's all."

Defendant–Appellant Carlos Pacheco appeals from his judgment of conviction after a plea of guilty to one count of aggravated reentry following deportation, in violation of 8 U.S.C. § 1326(a)(1), the court having sentenced him to a 46–month prison term, three years of supervised release and having ordered him to pay a $100 special assessment. At issue is whether the district court erred in applying the 16–level enhancement, pursuant to U.S.S.G. § 2L1.2(b)(1)(A), for illegal reentry after commission of an "aggravated felony," when that term is defined by statute as certain enumerated crimes "for which the term of imprisonment [is] at least one year," *see e.g.*, 8 U.S.C. § 1101(a)(43)(F) & (G), and when Pacheco had been convicted, prior to deportation, of three misdemeanors in Rhode Island state court that each resulted in a suspended term of imprisonment of one year. Despite a scrivener's error in the statutory definition of the term "aggravated felony," we find Congress' intent to classify certain misdemeanors as felonies clear. We therefore carry out the intent of Congress and affirm the judgment of the district court.

## BACKGROUND

### I. *Pacheco's Prior Offenses*

Pacheco, a native and citizen of Portugal, was admitted to the United States as a lawful permanent resident at Boston, Massachusetts in 1976, at the age of six. During the years 1990 to 1997, Pacheco was convicted of misdemeanors in the state of Rhode Island as follows: in 1990, for domestic assault and obstructing an officer; in 1992, for transmitting a false fire alarm, simple assault, shoplifting, failure to appear, domestic assault, tampering with an automobile (two counts), larceny under $500, obstruction of justice, and resisting

Martin J. Kehoe, Albany, NY, for Defendant–Appellant.

Tina Sciocchetti, Assistant United States Attorney, Albany, N.Y. (Daniel J. French, United States Attorney Northern District of New York), for Appellee.

Before: MINER, MCLAUGHLIN and STRAUB, Circuit Judges.

MINER, Circuit Judge:

"When *I* use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you *can* make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

—Lewis Carroll, *Through the Looking Glass* (emphasis in original).

arrest; in 1995, for shoplifting and obstruction of a police officer, simple domestic assault, and resisting arrest; in 1997, for eluding police and resisting arrest. Pacheco received suspended sentences or fines for most of these offenses, and on one occasion his sentence included court-ordered family counseling. He also apparently served some jail time over the years: three months for one offense, 45 days for another offense and two 30–day sentences on two other occasions.

On three separate occasions pertinent to this appeal, Pacheco received suspended one-year sentences, together with one year's probation. These sentences were imposed for (1) the 1992 conviction of larceny under $500, which arose out of the theft of a small video game valued at approximately $10; (2) the 1992 shoplifting conviction, which arose out of the theft of four packs of Newport's cigarettes and two packs of Tylenol Cold Medicine, valued at $83.50, from the Almac Store in Cranston, Rhode Island; and (3) the 1995 conviction for simple domestic assault, in which he was charged with assaulting his wife, Maria.

## II. *Pacheco's Deportation*

On November 18, 1997, the INS issued a Notice to Appear in removal proceedings pursuant to Section 240 of the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1229a, notifying Pacheco that he was deemed deportable based on two of the misdemeanor convictions for which he received suspended one-year sentences: his 1992 conviction for the offense of larceny under $500 and his 1995 conviction for the offense of domestic assault. The Notice then informed Pacheco that he was subject to removal from the United States pursuant to

Section 237(a)(2)(A)(iii) of the [INA] as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43)(G) of the [Act], a theft offense (including receipt of stolen property) or

burglary offense for which the term of imprisonment [is] at least 1 year [8 U.S.C. § 1101(a)(43)(G) ] .... [and] an aggravated felony as defined in section 101(a)(43)(F) of the [INA] [8 U.S.C. § 1101(a)(43)(F) ]. [T]o wit; a crime of violence (as defined in section 16 title 18, United States Code, ...) for which the term of imprisonment was at least one year.

On January 22, 1998, the INS issued a Warrant of Removal/Deportation in Pacheco's name. On February 17, 1998, an INS agent personally served Pacheco with a Form I–294, entitled "Warning to Alien Ordered Removed or Deported," advising him that he had been found deportable and would be permanently "prohibited from entering, attempting to enter, or being in the United States" because he had "been convicted of a crime designated as an aggravated felony." Form I–294 bears the following warning, prominently displayed at the bottom of the page:

WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Attorney General's express consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000.

An INS agent reviewed the Form I–294 with Pacheco, who then signed it. On February 20, 1998, Pacheco was deported from the United States to Portugal. The INS administrative file contains no indication that Pacheco ever filed an appeal of the Immigration Judge's order of removal or further litigated his removal case.

## III. *Pacheco's Present Offense of Illegal Reentry*

On April 4, 1999, immigration inspectors found Pacheco on a bus that was traveling

from Montreal, Canada to New York City. At the Champlain Port of Entry in Champlain, New York, Pacheco showed his Portuguese passport and told the immigration officer that he planned to visit his mother in New York City. A background check revealed Pacheco's prior deportation and, after subsequent questioning, Pacheco admitted to his prior deportation. Pacheco was arrested and charged with reentry following deportation, in violation of 8 U.S.C. § 1326.

On June 1, 1999, pursuant to a written plea agreement, Pacheco pled guilty to a one-count indictment. In the plea agreement, the parties stipulated that "the Specific Offense Characteristic set forth in Guideline § 2L1.2(b)(1)(A) applies in that Defendant was previously deported after conviction for an aggravated felony. Accordingly, a 16–point increase applies and *the total offense level is 24.*" (Emphasis in original). Prior to sentencing, and apparently after Pacheco saw his presentence report ("PSR"), the parties agreed to remove the stipulation in order to allow Pacheco to preserve for appeal the issue of whether his prior misdemeanor convictions did indeed qualify as aggravated felonies.

In the PSR, the United States Probation Office concluded that the enhancement under Section 2L1.2(b)(1)(A) for prior aggravated felony convictions did not apply in Pacheco's case, stating as follows:

> [T]he plea agreement stipulates that the Specific Offense Characteristic set forth in U.S.S.G. § 2L1.2(b)(1)(A) applies in that the defendant was previously deported after a conviction for an "aggravated felony" and that the defendant[']s adjusted offense level should be a 24. *However, all of the defendant's past convictions were only for misdemeanors not felonies.* Therefore, a 4 level enhancement rather [than] a 16 level enhancement is appropriate pursuant to U.S.S.G. § 2L1.2(b)(1)(B) making the Adjusted Offense Level 12 and the Total Offense Level 10, including a 2 level

reduction for Acceptance of Responsibility.

(Emphasis added).

Prior to sentencing, the government filed two memoranda with the district court in aid of sentencing, urging the court to apply the 16–point "aggravated felony" enhancement authorized by U.S.S.G. § 2L1.2(b)(1)(A). The government contended that three of Pacheco's prior convictions triggered the enhancement. These convictions were the two for which Pacheco had been deported—(1) the October 8, 1992 conviction for shoplifting and (2) the August 16, 1995 conviction for simple domestic assault—plus (3) his April 14, 1992 conviction for larceny under $500, *see supra* at 149. As noted above, each of these convictions earned Pacheco a suspended one-year sentence at Rhode Island's Adult Correctional Institute, followed by one year of probation.

In support of its position, the government argued that the term "aggravated felony" must be understood for purposes of the Guideline as it is understood for purposes of the INA, pointing out that the Guideline incorporates the statutory definition by reference. The government also cited our decision in *United States v. Pornes–Garcia,* 171 F.3d 142, 145 (2d Cir. 1999) (holding that a state drug trafficking felony conviction that would have been a misdemeanor under federal law was an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B) for purposes of the U.S.S.G. § 2L1.2(b)(1)(A) enhancement).

The government argued that "for federal sentencing purposes under the Guidelines, it is irrelevant whether a state categorizes a particular offense as a 'misdemeanor'; the federal definition of the term of art 'aggravated felony' applies," adding that "such definition includes those enumerated offenses for which a term of imprisonment of at least one year was imposed." The government also provided the district court with a copy of *United States v. Graham,* 169 F.3d 787 (3d Cir.1999), in which the court

addressed "an issue of first impression in the federal courts," *id.* at 791, and held, albeit reluctantly, that Congress' definition of the term "aggravated felony" for the purposes of the INA was a "term of art" that "includes certain misdemeanants who receive a sentence of one year." *Id.* at 792.

At the sentencing hearing on December 21, 1999, the district court relied on *Graham* and applied the enhancement. The court reasoned:

> Although the definition of aggravated felony found in 8 U.S.C. Section 1101(a)(43)(F) and (G) is awkwardly worded, this court concludes that for sentencing purposes, Congress intended to include misdemeanors in which the sentence imposed is one year. In reaching this conclusion, the Court adopts the reasoning of the Third Circuit in [*Graham*].....

In determining Pacheco's sentence, the court added the 16–level enhancement to the base level of 8, yielding a total offense level of 24, which—after a 3–level downward adjustment for acceptance of responsibility—carried a sentencing range of 46–57 months. The court sentenced Pacheco to 46 months' imprisonment, as "the lowest end that I can sentence you to," followed by three years' supervised release, and ordered Pacheco to pay a special assessment of $100. The court concluded as follows:

> Now, I just want the record to reflect I think it's an incredibly harsh sentence, and it seems for a misdemeanor crime that—the way the statutes read, one year or more means a person with misdemeanors where they can get up to a year, they qualify for this sentence. And I don't—I can't imagine that the sentencing reformers really meant this situation exists, but that's not according to the Third Circuit.

Pacheco was sentenced accordingly, and this appeal followed.

## DISCUSSION

### 1. *Applicable Law*

Section 2L1.2 of the Sentencing Guidelines defines the offense level for violations of 8 U.S.C. § 1326. *See* U.S.S.G. § 2L1.2. Subsection (a) specifies a base offense level of 8, while subsection (b)(1) provides for a mandatory sentencing enhancement if the defendant previously was deported after a criminal conviction, stating as follows:

> (A) If the conviction was for an aggravated felony, increase by 16 levels.
>
> (B) If the conviction was for (i) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by 4 levels.

*Id.* The Commentary explains that " '[a]ggravated felony,' is defined at 8 U.S.C. § 1101(a)(43)." *Id.*, comment., n. 1. The same note explains that " '[f]elony offense' means any federal, state, or local offense punishable by imprisonment for a term *exceeding* one year." *Id.* (Emphasis added.)

Section 101(a)(43) of the INA, *as amended by* the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009, 546 ("IIRIRA"), *codified at* 8 U.S.C. § 1101(a)(43), explains in relevant part that "[a]s used in this Chapter [Immigration and Nationality], ... [t]he term 'aggravated felony' means—..."

> (F) a crime of violence ... for which the term of imprisonment $at^2$ least one year;
>
> (G) a theft offense ... or burglary offense for which the term of imprisonment $at^2$ least one year[.]

8 U.S.C. § 1101(a)(43)(F) & (G) (Supp. III 1997) (emphasis added). Footnote two reads, "So in original. Probably should be preceded by 'is.' " *Id.; see also* 8 U.S.C.A. § 1101(a)(43)(F) & (G) (West 1999) (same).

This scrivener's error resulted from the 1996 amendments to the INA. Prior to the enactment of IIRIRA, the INA catego-

rized as aggravated felonies all offenses of theft or violence "for which the term of imprisonment imposed ... is at least 5 years." 8 U.S.C.A. § 1101(a)(43)(F) & (G) (West 1995). IIRIRA lowered the minimum term of qualifying sentences from five years to one year. *See* Pub.L. No. 104–208, Div. C, § 321(a)(3), 110 Stat. 3009, 627 (amending the provisions "by striking 'is at least 5 years' each place it appears and inserting 'at least one year' "). The question before us is whether this faulty language obscures the statutory intent to such a degree that we cannot rightly say that Pacheco's petit larceny and simple assault offenses are punishable upon his conviction for illegal reentry as aggravated felonies. Although there is persuasive authority in other circuits on this issue, we answer the question as one of first impression for our Court.

### 2. *Standard of Review*

■ Because the issue on appeal is the interpretation of the aggravated felony statute, our review is *de novo*. *See Pornes–Garcia*, 171 F.3d at 144. ("Where, as here, a sentencing court's application of the Guidelines 'approaches a purely legal question,' we review that application *de novo*.") (quoting *United States v. Medina*, 74 F.3d 413, 417 (2d Cir.1996)).

### 3. *Does a Misdemeanor Qualify as an "Aggravated Felony" under Section 2L1.2?*

■ After carefully considering the parties' arguments, and despite our own "misgivings" that Congress, in its zeal to deter deportable non-citizens from re-entering this country, has "improvidently, if not inadvertently, broken the historic line of division between felonies and misdemeanors," 169 F.3d at 787, we find that the intent of Sections 1101(a)(43)(F) & (G) is clear enough to affirm the district court's

application of the aggravated felony enhancement in this case. We note that the two principal arguments advanced by Pacheco before us follow the precise contours of appellant Graham's before the Third Circuit, and we endorse the findings and the reasoning of that court.

Pacheco's first argument—that we must construe the phrase "for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(F) & (G), as referring to the authorized *minimum* term of imprisonment, rather than to the sentence actually imposed—is unconvincing. First, we note that all courts of appeals that have considered the argument that the missing verb renders the meanings of Section 1101(a)(43)(F) & (G) indiscernible have rejected that contention. *See United States v. Maldonado–Ramirez*, 216 F.3d 940, 943–44 (11th Cir.2000); *United States v. Banda–Zamora*, 178 F.3d 728, 729 (5th Cir.1999) ("This drafting snafu does not make [§ 1101(a)(43)(F) ] unconstitutionally vague."); *Graham*, 169 F.3d at 789–91.[1]

■ Next, with regard to whether Congress was concerned with statutory minimums or actual sentences imposed when it enacted IIRIRA, we note that the INA instructs as follows:

> Any reference [in § 1101(a) ] to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.

8 U.S.C. § 1101(a)(48)(B). This subsection was added in the IIRIRA amendments and replaced the phrase "(regardless of any suspension of imprisonment)" that occurred in the individual statutory definitions of aggravated felonies previously

---

1. Without mentioning the missing verb, the Fourth Circuit has recently held that "[u]nder the plain language of [§ 1101(a)(43)(F) ], there is no requirement that the offense actually have been a felony, as that term is con-

ventionally understood," in finding a petitioner deportable for a misdemeanor offense of sexual battery under Virginia law. *Wireko v. Reno*, 211 F.3d 833, 835 (4th Cir.2000).

found at 8 U.S.C. § 1101(a)(43). *See id.* (West 1995). We agree with the Third Circuit that this language indicates that "the actual term imposed is ordinarily the definitional touchstone." 169 F.3d at 790; *accord United States v. Guzman–Bera,* 216 F.3d 1019, 1020 (11th Cir.2000) (finding that the aggravated felony enhancement for illegal reentry did not apply to defendant who was initially sentenced to five years' probation for grand theft, third degree, since a subsequent revocation of probation and imposition of 18–month prison term occurred *after* his illegal reentry into the United States); *Alberto–Gonzalez v. INS,* 215 F.3d 906, 908 (9th Cir.2000) (concluding that the phrase "for which the term of imprisonment [is] one year or more" in section 1101(a)(43)(G) refers to the actual sentence imposed).

■ Furthermore, as the statute makes clear, it is immaterial that Pacheco's sentence was suspended. *See United States v. Tejeda–Perez,* 199 F.3d 981, 983 (8th Cir.1999) (finding that defendant's prior second degree theft felony conviction required application of the aggravated felony enhancement at sentencing for illegal reentry, even though the one-to-fifteen year sentence imposed was suspended); *cf. Maldonado–Ramirez,* 216 F.3d 940, 942–43 (finding that defendant's multi-year sentence for prior attempted burglary and aggravated assault convictions required imposition of the aggravated felony enhancement upon illegal reentry although defendant had served only seven months of the sentence).

■ Finally, we note that nothing in the legislative history leads us to doubt our conclusion that a misdemeanor may, in some cases and consistent with legislative intent, fall within the INA's definition of "aggravated felony." The House Report shows that IIRIRA expanded the definition of aggravated felony as it applies to crimes of violence and theft offenses for the clear purpose of bringing more convictions within its ambit:

> This section amends INA section 101(a)(43) (as amended by section 440(e) of the AEDPA (Public Law 104–132)), the definition of "aggravated felony," by: adding crimes of rape and sexual abuse of a minor; lowering the fine threshold for crimes relating to money laundering and certain illegal monetary transactions from $100,000 to $10,000; *lowering the imprisonment threshold for crimes of theft, violence, racketeering, and document fraud from 5 years to 1 year;* and lowering the loss threshold for crimes of tax evasion and fraud and deceit from $200,000 to $10,000.

H.R. Conf. Rep. No. 828, 104th Cong., 2d Sess., at 494 (Sept. 24, 1996) (emphasis added). Nothing in the legislative history indicates, however, that in lowering the term of imprisonment to one year, Congress intended to exclude a conviction that otherwise meets this definition merely because it is labeled under state law as a misdemeanor, and may, in another case, be punished by a term of less than one year. *See Maldonado–Ramirez,* 216 F.3d at 944.

■ With regard to Pacheco's second principal contention before us, that characterizing a misdemeanor as an aggravated felony is at odds with other uses of "felony" in federal law and with other uses of "aggravated felony" in the INA itself, we are unpersuaded that any of these arguments can change the disposition of his case. The "whole act" rule of statutory construction exhorts us to read a section of a statute not "in isolation from the context of the whole Act" but to "look to the provisions of the whole law, and to its object and policy," *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) (internal quotation marks omitted). As we have put it, we must "interpret [a] specific provision in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part." *United States v. Bonanno Organized Crime Family of La Cosa Nostra,* 879 F.2d 20, 24 (2d Cir.1989) (citing 2A Suther-

land Statutory Construction, § 46.05 (4th ed. 1984)).

Despite Pacheco's contention to the contrary, we find a "whole act" reading to favor the government's view. Pacheco would have us read certain provisions of the Sentencing Guidelines and of the INA in isolation, such as the statement in U.S.S.G. § 2L1.2(b)(1)(A) Application Note 1 that " '[f]elony offense' means any federal, state, or local offense punishable by imprisonment for a term *exceeding* one year." We do not see how that definition of "felony," standing alone, renders inoperative the IIRIRA amendments to the INA's definition of "aggravated felony." Pacheco also points us to other subsections of the aggravated felony statute, such as § 1101(a)(43)(T), that speak in terms of a sentence that "*may* be imposed," as belying the clarity of Congress' intent to characterize an offense as an aggravated felony based on the actual sentence imposed. These sections, however, merely show that "Congress knows how to distinguish between the penalty authorized for a crime and the penalty actually imposed in a particular case." *Graham*, 169 F.3d at 791.

Finally, Pacheco's best argument lies in the arguable inconsistency contained within 8 U.S.C. § 1326 itself, the statute defining the underlying offense of illegal reentry after deportation. The statute provides separate penalties for aliens who have committed "three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)," § 1326(b)(1) (providing maximum sentence of 10 years), and for aliens who have been removed "subsequent to a conviction for commission of an aggravated felony," § 1326(b)(2) (maximum sentence of 20 years). We agree that it seems incongruous for a misdemeanor offense to be a predicate to an "aggravated felony," where the statute defining the offense attempts to differentiate between 1) misdemeanants and felons who are not aggravated felons on the one

hand and 2) aggravated felons on the other. However, where U.S.S.G. § 2L1.1(b)(1)(A) incorporates by reference 8 U.S.C. § 1101(a)(43) as the definition of aggravated felony, and where that statutory definition is explicit on its face that certain offenses punished by a one-year sentence are included, it is neither our task to rewrite the definition of the underlying offense to eliminate the incongruity nor to ignore the clear dictates of the amended INA. *See Graham*, 169 F.3d at 792–93 ("[R]ather than making the underlying offense conform to the label Congress erroneously used to describe section 1101(a)(43) as amended, we give effect to the definition of the underlying offense and ignore the label."). As the Third Circuit noted, Congress would have done better at the time of the 1996 amendments to dispense with the term "aggravated felony" and to refer to this wide class of convictions as "aggravated offenses." *See id.* at 792. Congress' failure to do so, however, does not give us an excuse to ignore the clear meaning of the amendments to the INA and remand for a less severe sentence.

In accordance with the foregoing, the judgment of the district court is hereby affirmed.

Straub, Circuit Judge, dissenting:

I respectfully dissent. In my view, Carlos Pacheco's three suspended sentences of one-year's imprisonment for misdemeanor convictions cannot constitute "aggravated felonies" within the meaning of Section 101(a)(43)(F) & (G) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1101(a)(43)(F) & (G), unless we adopt an "Alice–in–Wonderland–like definition of the term 'aggravated felony' " that does violence to the plain and settled meanings of both "aggravated" and "felony." Nancy Morawetz, *Understanding the Impact of the 1996 Deportation Laws and the Limited Scope of the Proposed Reforms*, 113 HARV. L. REV.1936, 1939 (2000). The majority apparently agrees, but finds this

conclusion acceptable because it "consider[s] Congress 'to be master—that's all.'" *Ante* at 149 (quoting LEWIS CARROLL, THROUGH THE LOOKING GLASS). In reaching this conclusion, however, the majority asks and answers the wrong question, for the critical issue presented by this case is *not* "whether Congress *can* make the word 'misdemeanor' mean 'felony,'" *ante* at 149 (emphasis added), but rather whether it actually *did*. Because the plain meaning of "aggravated felony" conflicts with the manner in which that term is apparently defined in the statute, and because there is no indication that Congress intended to depart from the term's plain meaning, I believe that the definition of "aggravated felony" in INA § 101(a)(43) is ambiguous on its face. Thus, the rule of lenity requires that we interpret the definition to exclude misdemeanor offenses.

## I. *Plain Meaning*

In determining whether INA § 101(a)(43) includes misdemeanor convictions within the "crime of violence" and "theft offense" subsections of the "aggravated felony" definition, we must start by examining the plain meaning of the stat-ute. *See United States v. Dauray*, 215 F.3d 257, 260 (2d Cir.2000). In doing so, we must attempt to give effect to the plain meaning of each word in the statute. *See id.* (when interpreting statute's plain meaning, we "consider the ordinary, common-sense meaning of the words"); *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." (internal quotation marks omitted)); *see also Market Co. v. Hoffman*, 101 U.S. 112, 115–16, 25 L.Ed. 782 (1879) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)).

The plain and ordinary meanings of the words "aggravated" and "felony" clearly conflict with an interpretation of the term "aggravated felony" that includes misdemeanor offenses. First, there can be little argument that the word "felony" is commonly understood—and statutorily defined—to include crimes punishable by prison terms of *greater than* one year.[1]

[1.] While the Third Circuit acknowledged the "solidified" one-year line between felonies and misdemeanors, *United States v. Graham*, 169 F.3d 787, 792 (3d Cir.1999), the court there—and the majority here—decided to "give effect to the definition of the underlying offense and ignore the label." *Ante* at 154 (quoting *Graham*, 169 F.3d at 793). In support of this decision, *Graham* cites cases that resolve the question of whether a crime is a "felony" or "misdemeanor" with reference to the actual term of imprisonment imposed, rather than with reference to the label given the offenses in question by Congress. *See Graham*, 169 F.3d at 793 & n. 4 ("When ... inconsistencies [became manifest in how particular crimes were labeled], courts generally held that the overarching felony/misdemeanor definition controlled, so that a particular statute's label would be overridden if it was inconsistent with the 'real' definition of a felony or misdemeanor." (citation omitted)).

However, correct application of this principle actually yields the opposite result. In each of the cases cited by *Graham*, the court "ignore[d] the label" in order to ensure con-sistent application of the longstanding, "real" definition of "felony"; in each case, a criminal statute mislabeled a crime as a "felony" or "misdemeanor" by *ignoring* the historical one-year/more-than-one-year line between the two. *See, e.g., Loos v. Hardwick*, 224 F.2d 442 (5th Cir.1955) (criminal offense providing for up to five years' imprisonment was labeled a "misdemeanor," which led the defendant to argue that he could not permissibly be imprisoned for more than one year). With respect to the "aggravated felony" definition in the INA, however, *Graham* (and the majority) invoke the same principle to advance the opposite end: namely, to *undermine* the longstanding consistency in the use of the term "felony." This conclusion is reinforced by the significantly different setting in which this case arises: unlike the statutory provisions discussed in the cases discussed by *Graham*, all of which actually set forth substantive criminal offenses, the "aggravated felony" provision in INA § 101(a)(43) does not itself define any crime. Rather, INA § 101(a)(43) merely *identifies* a certain set of *preexisting* felonies to which Congress has decided to

*See* 18 U.S.C. § 3559(a); *United States v. Graham,* 169 F.3d 787, 792 (3d Cir.1999); U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n. 1; *see also* BLACK'S LAW DICTIONARY 633 (7th ed. 1999); WEBSTER'S THIRD NEW INT'L DICTIONARY 836 (1993). And it is a well-settled maxim of statutory construction that "[w]here Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981); *see also Perrin v. United States,* 444 U.S. 37, 42–43, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (interpreting statutory use of common law term "bribery" in light of term's "ordinary, contemporary, common meaning" at time of statute's enactment); *United States v. United States Gypsum Co.,* 438 U.S. 422, 437, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) ("Congress will be presumed to have legislated against the background of our traditional legal concepts...."); *Standard Oil Co. of New Jersey v. United States,* 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.").

Second, it is quite clear that "aggravated felony" defines a subset of the broader category "felony." Common sense and standard English grammar dictate that when an adjective—such as "aggravated"—modifies a noun—such as "felony"—the combination of the terms delineates a subset of the noun. One would never suggest, for example, that by adding the adjective "blue" to the noun "car," one could be attempting to define items that are not, in the first instance, cars. In other words, based on the plain meaning of the terms "aggravated" and "felony," we should presume that the specifics that follow in the definition of "aggravated felony" under INA § 101(a)(43) serve to elucidate what makes these particular felonies "aggravated"; we certainly should not presume that those specifics would include offenses that are not felonies *at all.*[2] Thus, under the majority's view, Congress has defined a subset of a category to include items that are not in the broader category itself.

The illogic of this conclusion is all the more apparent when one considers the meaning of the word "aggravated." "Aggravated" denotes a state of affairs that is worse, enhanced, or more severe in some

attach immigration consequences. Simply "ignoring the label," therefore, does not make sense in this context—for it is that label which helps to delimit the category of crimes that are to be included.

Consistent application of the underlying principle invoked by *Graham,* therefore, requires that whether a particular criminal offense constitutes an "aggravated felony" under INA § 101(a)(43) be determined, in the first instance, with reference to whether it properly may be characterized as a "felony." And in accordance with that principle, whether such an offense actually *is* a "felony" under *criminal* law should be determined with reference to the traditional one-year/more-than-one-year line—not the label given to a particular criminal offense under federal *immigration* law.

2. The notion that the "aggravated felony" category constitutes a subset of the broader "fel-

ony" category is reinforced by the usage of both terms in INA § 274(b)(1), 8 U.S.C. § 1326(b)(1), which authorizes imprisonment up to 10 years for illegal reentry by an alien who was deported after being convicted for commission of a "felony (*other than* an aggravated felony)" (emphasis added). For those illegal reentrants who were deported after being convicted for commission of an *aggravated* felony, the punishment (up to 20 years' imprisonment) is set forth in the following subsection, INA § 274(b)(2), 8 U.S.C. § 1326(b)(2). Indeed, the majority itself acknowledges that these provisions are "incongruous" with any reading of the statute under which "aggravated felony" includes misdemeanors. *Ante* at 154. Especially given an already ambiguous statutory text, we should not presume lightly that Congress intended such an absurd result. *See United States v. Wilson,* 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

manner. *See, e.g.,* BLACK'S LAW DICTIONARY 65 (7th ed. 1999) (when used to describe a crime, "aggravated" means "made worse or more serious by circumstances such as violence, the presence of a deadly weapon, or the intent to commit another crime"); WEBSTER'S THIRD NEW INT'L DICTIONARY 41 (1993) (to "aggravate" means "to make worse, more serious, or more severe"); *cf. Almendarez–Torres v. United States,* 523 U.S. 224, 235, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (noting that if 8 U.S.C. § 1326(b)(2) were a separate offense rather than a sentencing enhancement section, it would require proof that a prior offense was "'aggravated' *or serious*" (emphasis added)). If a felony is a crime punishable by *more than* one year, how, then, can an "aggravated" felony include crimes punishable by *just* one year? To include misdemeanors within the definition of "aggravated felony" turns the plain meaning of the word "aggravated" entirely on its head, since in addition to not *being* felonies in the first place, misdemeanors are conventionally understood as being *less severe* than felonies, as well. *See* THOMAS ALEXANDER ALEINIKOFF ET AL., IMMIGRATION AND CITIZENSHIP PROCESS AND POLICY 738 (4th ed.1998) (suggesting that INA § 101(a)(43) is ambiguous given the manner in which it uses the terms "aggravated" and "felony").

Despite these significant difficulties, the majority asserts that we must adhere to the "clear dictates" of the statute and the "explicit," "clear meaning" of the aggravated felony definition. *Ante* at 154. It is only by *ignoring* the clear meaning of certain terms within that statutory provision, however, that it becomes possible to render the definition "explicit on its face," as the majority describes it. *Ante* at 154. The Third Circuit (and, by endorsing that court's opinion, *ante* at 152, the majority) also asserts that Congress defined a "term of art" in "aggravated felony"—a term of art that includes misdemeanors. *Graham,* 169 F.3d at 792. While Congress certainly "has a right to define one thing to mean something different from what it normally means," *Benjamin v. Jacobson,* 172 F.3d

144, 173 (2d Cir.) (en banc) (Calabresi, J., concurring), *cert. denied,* —— U.S. ——, 120 S.Ct. 72, 145 L.Ed.2d 61 (1999), the counter–intuitive use of language in INA § 101(a)(43)(F) & (G) should raise red flags signaling the need for closer scrutiny. It is not at all self-evident that the text of INA § 101(a)(43) includes misdemeanor convictions within the aggravated felony definition, at least not without a clearer indication that Congress intended that result. *Cf. Benjamin,* 172 F.3d at 173 n. 5 (Calabresi, J., concurring) ("[W]hen Congress, in a definitional section, seems to say that bananas *are* apples, we should ask whether that is really what Congress meant. . . ."). Definitional provisions such as INA § 101(a)(43), like any other statutory provisions, "must be given their ordinary meanings, when such meanings make sense, but must be read in their context . . . when the seemingly ordinary meanings lead to statements that are—to put it mildly—linguistically unnatural." *Benjamin,* 172 F.3d at 192 (Calabresi, J., concurring). *Cf. Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) ("The meaning of statutory language, plain or not, depends on context." (internal quotation marks and citation omitted)).

Thus, in my view, the "linguistically unnatural" statement that "aggravated felony" includes misdemeanors renders the term ambiguous and necessitates further inquiry.

## II. *Legislative History and Statutory Structure*

Since it cannot seriously be contended that the plain, textual meaning of the "aggravated felony" definition is unambiguous, we must turn to other sources of interpretation for guidance. Unfortunately, the legislative history of INA § 101(a)(43) reveals very little regarding the intended scope of that definition. While Congress clearly intended to broaden the aggravated felony category to in-

clude more criminal offenses, there is no evidence to suggest that in doing so, Congress intended to "break[ ] the time-honored line between felonies and misdemeanors" by including offenses punishable by one year's imprisonment within that definition. *Graham*, 169 F.3d at 792.

Indeed, if anything, the legislative history of the amendments to INA § 101(a)(43) suggests that Congress wished to lower the imprisonment threshold from five years to one year, but in doing so *inadvertently* included offenses punishable by *exactly* one year. Prior to the statute's 1996 amendments, INA § 101 defined "aggravated felony" as, *inter alia*, a crime of violence or a theft offense "for which the term of imprisonment imposed (regardless of any suspension of imprisonment) is at least 5 years." INA § 101(a)(43)(F) & (G), 8 U.S.C. §§ 1101(a)(43)(F) & (G) (1994). In the amending legislation, Congress directed that "is at least 5 years" be struck and replaced by "at least one year." Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, 3009–627 (Sept. 30, 1996). The Senate Report on the amendment stated only that IIRIRA "[l]owers fine and imprisonment thresholds in the definition (from 5 years to 1 year ... )." S. REP. No. 249, 104th Cong., 1996 WL 180026. As the *Graham* court noted, the one year threshold was likely chosen because it "has been used to distinguish misdemeanors from felonies for a very long time." 169 F.3d at 792. Congress, however, most likely failed to realize that by retaining the words "at least," it was potentially disregarding that historic distinction.

Furthermore, the overall structure of the statute by no means *dictates* that misdemeanors for which one-year sentences are imposed be included within the definition of "aggravated felony." Assuming that INA § 101(a)(43)(F) & (G) mean to refer to sentences actually imposed and not to potential sentences, as both the majority and the Third Circuit sensibly conclude, *see ante* at 152; *Graham*, 169 F.3d at 792, no logical problem results from interpreting "crime of violence" and "theft offense" only to include crimes that already are felonies. As the *Graham* court itself concedes, "[s]ome one-year sentences would still be aggravated felonies—those imposed for felonies, that is, for crimes with maximum terms of more than one year."[3] 169 F.3d at 792.

Moreover, if "aggravated felony" is read to include misdemeanor crimes of violence, the incongruous result would follow that the commission of three or more misdemeanors involving "crimes against the person" is punishable by a prison term up to 10 years, while the commission of just *one* misdemeanor involving a "crime of violence" is punishable by a prison term up to 20 years.[4] *Compare* INA § 274(b)(1), 8

---

**3.** An analysis of the other subsections of INA § 101(a)(43) reveals that the overwhelming number of offenses included within the definition of "aggravated felony" are, without question, felonies. Only one—INA § 101(a)(43)(N), which incorporates violations of INA § 274(a)(2), 8 U.S.C. § 1324(a)(2), concerning the bringing and harboring of certain aliens—even appears to contemplate the inclusion of a misdemeanor. Even with this subsection, however, it is not entirely clear that misdemeanors are meant to be included, since only a limited class of offenses within INA § 274(a)(2) actually constitute misdemeanors and INA § 101(a)(43)(N) itself modifies the underlying offense in INA § 274(a)(2) by excluding first offenses in which the alien committed the offense for the purpose of assisting only his or her spouse, child, or parent.

**4.** This incongruity draws attention to another problem with the "aggravated felony" definition in INA § 101(a)(43). *See generally* Iris Bennett, Note, *The Unconstitutionality of Nonuniform Immigration Consequences of "Aggravated Felony" Convictions*, 74 N.Y.U. L. REV. 1696, 1720–29 (1999). To the extent that provisions such as the illegal reentry offense defined in INA § 276(b)(2), 8 U.S.C. § 1326(b)(2), place nonuniform consequences upon conduct encompassed within the "aggravated felony" category, based on differences in state criminal law, such nonuniform operation of federal immigration law violates the one textual limitation on the federal immigration power explicitly set forth in the Con-

U.S.C. § 1326(b)(1) *with* INA § 274(b)(2), 8 U.S.C. § 1326(b)(2). The majority avoids this anomaly by stating that "it is neither our task to rewrite the definition of the underlying offense to eliminate the incongruity nor to ignore the clear dictates of the amended INA." *Ante* at 154. However, it most certainly *is* our task to interpret an *ambiguous* INA provision in such a way as to avoid this incongruity when an alternative interpretation is readily available. *See United States v. Wilson*, 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir.2000) (same). Such attentiveness is particularly warranted when, as in this instance, we are "construing a recent amendment to a complex statute that produces an unexpected result and when there is strong reason to doubt that Congress intended that result." *Lewis v. Grinker*, 965 F.2d 1206, 1215 (2d Cir.1992).

### III. *The Rule of Lenity*

In light of the inherent ambiguity in INA § 101(a)(43)(F) & (G), I believe we must apply the rule of lenity to interpret the statute in Pacheco's favor.

The rule of lenity provides that "ambiguous laws which impose penal sanctions are to be strictly construed against the Government." *United States v. Margiotta*, 688 F.2d 108, 120 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *see also Dauray*, 215

F.3d at 264 (suggesting that rule of lenity has constitutional underpinnings rooted in due process notions of "fair warning"). "[B]efore a man can be punished as a criminal under the Federal law his case must be 'plainly and unmistakably' within the provisions of some statute." *United States v. Plaza Health Labs., Inc.*, 3 F.3d 643, 649 (2d Cir.1993) (internal quotation marks omitted), *cert. denied*, 512 U.S. 1245, 114 S.Ct. 2764, 129 L.Ed.2d 878 (1994). The rule is equally applicable in cases involving criminal sentencing, and in civil cases in which the governing standard is found in a criminal statute or the same statutory provision has both criminal and civil applications. *See, e.g., United States v. R.L.C.*, 503 U.S. 291, 305, 112 S.Ct. 1329, 117 L.Ed.2d 559 (1992) ("[T]he rule [of lenity] has been applied not only to resolve issues about the substantive scope of criminal statutes, but to answer questions about the severity of sentencing...."); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518 & n. 10, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) (in civil action, rule of lenity applies when construing ambiguous statute that "has criminal applications"); *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990) (in a civil action, when the "governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity").

We must reserve lenity "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247,

---

stitution—namely, the requirement under Article I that immigration law be uniform throughout the United States. *See* U.S. Const. Art. I, § 8, cl. 4 (authorizing Congress "[t]o establish a *uniform* Rule of Naturalization" (emphasis added)). Under the INA definition of "aggravated felony," an individual convicted, for example, of misdemeanor as-

sault and battery in Texas would be subject to removal as an "aggravated felon," while an individual convicted of the exact same offense in Arizona would not be subject to removal on that basis, since the maximum sentence for misdemeanor assault in Texas is one year, while in Arizona it is only six months. *See* Bennett, *supra*, at 1724–25.

65 L.Ed.2d 205 (1980)); *see also United States v. Granderson*, 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (applying rule of lenity "where text, structure, and history fail to establish that the Government's position is unambiguously correct").

Here, in my view, "a reasonable doubt persists" as to the "statute's intended scope." *Moskal*, 498 U.S. at 108, 111 S.Ct. 461. As in *Dauray*, "[w]e have read the plain language of" INA § 101(a)(43)(F) & (G), "considered the traditional canons of statutory construction, looked for legislative history, and canvassed potentially relevant case law. And we are left with no more than a guess as to the proper meaning of the ambiguous language here." 215 F.3d at 264. Accordingly, we should construe the statute to exclude misdemeanor offenses.

### IV. *Conclusion*

The definition of "aggravated felony" in INA § 101(a)(43) has far-reaching implications that go well beyond the illegal reentry sentencing context. Aliens who have been convicted of an aggravated felony are ineligible for most forms of discretionary relief from deportation. *See* INA § 208(b)(2)(B)(i), 8 U.S.C. § 1158(b)(2)(B)(i) (asylum); INA § 240A(a)(3), 8 U.S.C. § 1229b(a)(3) (cancellation of removal); INA § 240B(a)(1) & (b)(1)(C), 8 U.S.C. § 1229c(a)(1) & (b)(1)(C) (voluntary departure). Moreover, such aliens are conclusively presumed to be deportable, and are subject to mandatory INS detention and expedited administrative removal proceedings. *See* INA §§ 236(c), 238(a)-(c), 8 U.S.C. §§ 1226(c), 1228(a)-(c). Finally, aliens convicted of aggravated felonies are not entitled to judicial review of their detention or of removal orders that are based upon those convictions, *see* INA §§ 236(e), 242(a)(2)(C), 8 U.S.C. §§ 1226(e), 1252(a)(2)(C), and may not reenter the United States without the Attorney General's consent to apply for readmission, *see*

INA § 212(a)(9)(A)(i), 8 U.S.C. § 1182(a)(9)(A)(i). *See generally* 6 Charles Gordon et al., Immigration Law and Procedure § 71.05[2][c] (rev. ed. 1998) (discussing numerous provisions and restrictions relating to aggravated felons); Thomas Alexander Aleinikoff et al., Immigration and Citizenship: Process and Policy 739 (4th ed. 1998) (same).

With so much at stake, I am uncomfortable with this Court "simply guessing about congressional intent," *Dauray*, 215 F.3d at 265, and respectfully dissent.