In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1799

Jose F. Guerrero-Perez,

Petitioner,

v.

Immigration and Naturalization Service,
and John Ashcroft,

Respondents.


On Petition for Review
From the Board of Immigration Appeals
No. A24 496 118


Argued January 9, 2001--Decided March 5, 2001



        Before Flaum, Chief Judge, and Bauer and Coffey,
Circuit Judges.

        Flaum, Chief Judge.  The Immigration Court found
Jose F. Guerrero-Perez removable on the grounds
that he had: (1) committed an aggravated felony--
that is, sexual abuse of a minor, and (2) been
convicted of the crime of child abuse. The Board
of Immigration Appeals ("BIA") affirmed the
Immigration Court's decision concerning
Guerrero's removability and dismissed his appeal.
Guerrero appeals to this court arguing that
because his criminal sexual abuse conviction
under Illinois law is considered a Class A
misdemeanor, and not a felony, he cannot be
deemed to have committed an aggravated felony
under sec. 101(a)(43)(A) of the Immigration and
Nationality Act ("INA"), 8 U.S.C. sec.
1101(a)(43)(A). For the reasons stated below, we
affirm the decision of the BIA.

Background

        Guerrero is a native and citizen of Mexico./1
He was born on January 25, 1979 and entered the
United States on March 28, 1979 when he was just
over two months old, as an immigrant child
admitted for Lawful Permanent Residence without
an immigrant visa in accordance with 8 C.F.R.
sec. 211. The Immigration and Naturalization
Service ("INS") in a Notice To Appear, dated July

26, 1999, charged that Guerrero was subject to removal: (1) under sec. 237(a)(2)(A)(ii) of the INA, 8 U.S.C. sec. 1227(a)(2)(A)(ii) because he had been convicted of two crimes involving moral turpitude; (2) under sec. 237(a)(2)(A)(iii) of the INA, 8 U.S.C. sec. 1227(a)(2)(A)(iii), because he had been convicted of the aggravated felony of sexual abuse of a minor, as defined in sec. 101(a)(43)(A) of the INA, 8 U.S.C. sec. 1101(a)(43)(A); and (3) because he was convicted of child abuse, sec. 237(a)(2)(E)(i) of the INA, 8 U.S.C. sec. 1227(a)(2)(E)(i). The Immigration Judge ("IJ") did not find Guerrero removable on the basis that he had committed two crimes involving moral turpitude under 8 U.S.C. sec. 1227(a)(2)(A)(ii). Both the IJ and the BIA determined that Guerrero was removable because of his aggravated felony conviction, 8 U.S.C. sec. 1227(a)(2)(A)(iii), for sexual abuse of a minor, 8 U.S.C. sec. 1101(a)(43)(A) and his conviction for child abuse, 8 U.S.C. sec. 1227(a)(2)(E)(i). Aliens who have committed child abuse are not considered aggravated felons and are eligible for cancellation of removal. An alien deemed to have committed an aggravated felony does not have the right to cancellation of removal, sec. 240 (A)(a)(3) of the INA, 8 U.S.C. sec. 1229b(a)(3), and therefore whether we find Guerrero to be an aggravated felon is critical in this case. As a consequence, we will limit our discussion to this issue. In his appeal, Guerrero argues that under the INA, an immigrant cannot be considered an aggravated felon if he or she was convicted of a misdemeanor rather than a felony./2

Discussion

A.  Jurisdiction

The government argues that we lack jurisdiction to consider Guerrero's petition for review. According to the government, sec. 242(a)(2)(C) of the INA, 8 U.S.C. sec. 1252(a)(2)(C) limits our review because it states that: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii) [aggravated felony] . . ." (emphasis added). The BIA found Guerrero removable because he had been convicted of an aggravated felony (sexual abuse of a minor), 8 U.S.C. sec. 1227(a)(2)(A)(iii), which is covered by 8 U.S.C. sec. 1252(a)(2)(C). Notwithstanding this potential bar to review, the government concedes that the court retains its authority to review the jurisdictional facts upon which the removal proceedings were based, including a determination of whether in fact Guerrero is an alien who is removable because he has committed a criminal offense listed in the

relevant statute. The government's position is that the BIA properly determined that the INS had established Guerrero's alienage and removability. Specifically, Guerrero's conviction for criminal sexual abuse constitutes an aggravated felony. Because this conviction is a disqualifying crime under 8 U.S.C. sec. 1252(a)(2)(C), the government contends that we must dismiss Guerrero's petition for review because this Court lacks jurisdiction over Guerrero's claim.

The government has not presented a successful argument as to why we should not review this case. While it may be true that 8 U.S.C. sec. 1252(a)(2)(C) suggests that we do not have the authority to review cases involving the removability of aggravated felons, this statute does not foreclose completely our inquiry into this matter. We must determine whether this Court has jurisdiction over this case. As a consequence, we have the jurisdiction to decide whether Guerrero has been convicted of an aggravated felony. See Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999) ("Notwithstanding the unreviewability of cases involving deportation of aggravated felons, however, this Court does have jurisdiction to determine whether it has jurisdiction; that is, we have jurisdiction to determine whether Xiong has been convicted of an aggravated felony."). "[B]oth jurisdiction and the merits turn" on whether Guerrero has committed an aggravated felony. Id. Having determined we have jurisdiction to review Guerrero's case, we now turn to examine his argument that his misdemeanor conviction for criminal sexual abuse does not constitute an aggravated felony.

B.   Aggravated Felony:
Can it be a Misdemeanor?

We review the BIA's determination that Guerrero is removable because he is an aggravated felon de novo. Xiong, 173 F.3d at 605. Nevertheless, we defer to the BIA's interpretation of the statute it administers. Id.; see also Marquez v. INS, 105 F.3d 374, 378 (7th Cir. 1997). Further, we accord deference to the BIA's factual findings, and we will reverse the BIA only if the record lacks substantial evidence to support its factual conclusions. Sayaxing v. INS, 179 F.3d 515, 519 (7th Cir. 1999).

This appeal centers around whether Guerrero committed an aggravated felony. In April of 1999, Guerrero pled guilty in Illinois state court to the offense of "criminal sexual abuse." According to Illinois law, "[t]he accused commits criminal sexual abuse if he or she commits an act of sexual penetration or sexual conduct with a

victim who was at least 13 years of age but under 17 years of age and the accused was less than 5 years older than the victim." 720 ILCS 5/12-15(c). Guerrero received a Class A misdemeanor conviction for his action. The criminal complaint indicates that Guerrero committed an act of sexual penetration with a girl, and at the time, he was nineteen years old and she was fifteen years old. As a result of his guilty plea, Guerrero was sentenced to 30 days work release and two years of sex offender probation. The IJ in his oral decision said that Guerrero had committed the aggravated felony of sexual abuse of a minor and the crime of child abuse. Accordingly, he was not entitled to cancellation of removal under sec. 240(A) of the INA, 8 U.S.C. sec. 1229b, because this statute does not allow for such relief if an alien has been convicted of an aggravated felony. See 8 U.S.C. sec. 1229b(a)(3). During argument before the IJ, Guerrero's counsel raised the issue that Guerrero's conviction was a Class A misdemeanor, and not a felony, and therefore should not be considered an aggravated felony. The IJ, after rendering his oral decision, said, "I did forget to address in my decision the argument that the respondent's conviction was a misdemeanor and not a felony. The Board of Immigration Appeals has held in a number of unprecedented decisions, which I've received[,] that . . . even misdemeanors can constitute aggravated felonies under the Immigration Act. So even if the respondent's conviction for criminal sexual abuse was a misdemeanor, I would find that it still constitute[d] an aggravated felony under the Act." It is difficult to track this brief comment made by the IJ because he did not provide any such case citations for the proposition that the BIA has held that misdemeanors can constitute aggravated felonies nor has the government in this appeal. Additionally, the BIA did not proceed to analyze this question. Rather, it concluded that Guerrero's behavior was sexual abuse of a minor as defined in In re Rodriguez-Rodriguez, Interim Decision 3411 (BIA 1999). In Rodriguez-Rodriguez, the BIA determined that sexual abuse of a minor included: "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." 18 U.S.C. sec. 3509(a)(8). Applying this definition, the BIA stated that "[t]his statute [18 U.S.C. sec. 3509(a)(8)] encompasses the conduct at issue here [Guerrero's behavior]." According to the BIA, Guerrero had committed an aggravated felony as well as child abuse. Although the BIA acknowledged that Guerrero's

conviction was a Class A misdemeanor, its decision is silent with regard to the issue of whether Guerrero's misdemeanor conviction can be deemed an aggravated felony. Thus, we begin with a limited commentary by the IJ on the misdemeanor-felony question, and no analysis on the issue by the BIA.

On the other hand, Guerrero's position is quite explicit. He argues that he never committed a felony, and certainly not an aggravated felony. Guerrero points to several decisions by this Court, which he believes support his claim that a misdemeanor cannot constitute an aggravated felony for the purposes of the statute in question. Solorzano-Patlan v. INS, 207 F.3d 869 (7th Cir. 2000), was a case in which an alien was convicted of burglarizing a vehicle. Under Illinois law, this crime is labeled as a felony burglary. This Court determined that this type of burglary was not the sort of aggravated felony Congress meant to reach when it included burglary as an aggravated felony, 8 U.S.C. sec. 1101(a)(43)(G). Further, we found that Solorzano-Patlan's actions did not necessarily constitute a crime of violence, 8 U.S.C. sec. 1101(a)(43)(F). Guerrero also argues that Xiong, 173 F.3d 601, is yet another case in which this Court decided that a Wisconsin felony conviction involving sexual conduct with a victim under sixteen years of age was not a crime of violence because of the particular facts of the case. Moreover, Guerrero contends that in Jideonwo v. INS, 224 F.3d 692 (7th Cir. 2000), this Court said that in a felony setting a plea carries with it settled expectations. Accordingly, Guerrero asserts that when he entered a plea of guilty for a Class A misdemeanor, it was not possible for him to have known that the BIA would determine that such a conviction was not only a felony, but an aggravated felony. According to Guerrero, Congress clearly has the capacity to distinguish between what is a misdemeanor and what constitutes a felony. An example of Congress' ability to do so is the Immigration Reform and Control Act of 1986, which provides general amnesty for people in the United States, but precludes any individual who has one felony conviction or three misdemeanor convictions. See Immigration Reform and Control Act of 1986, sec. 201, Pub. L. No. 99-603, 100 Stat. 3359 (1986). More recently, Congress enacted the Legal Immigration Family Equity Act and provided that certain individuals could obtain permanent residence, as long as they did not have one felony or three misdemeanor convictions. See Legal Immigration Family Equity Act, sec. 1104(c), Pub. L. No. 106-553, 114 Stat. 2762 (2000). It is Guerrero's contention that if the government were to prevail, and we were to

conclude that his actions did fall within the aggravated felony ambit, then he would be barred from ever returning to the United States. Guerrero asserts that the statute discusses "aggravated felonies," and not "aggravated felonies or misdemeanors." Considering the significant consequences attached to labeling him as an aggravated felon, he urges us not to speculate about whether Congress intended to include misdemeanors within its definition of aggravated felony--that is, we should construe any ambiguity in favor of the alien and find that the term aggravated felony does not encompass misdemeanors.

The approach that Guerrero would like us to adopt is the one articulated by the dissent in United States v. Pacheco, 225 F.3d 148 (2d Cir. 2000) (Straub, J., dissenting). In Pacheco, the Second Circuit dealt with a case where the defendant pled guilty to aggravated reentry following deportation, in violation of 8 U.S.C. sec. 1326(a)(1). The question became whether he deserved a 16-level enhancement for having committed an aggravated felony as defined within the meaning of sec. 101(a)(43)(F) and (G) of the INA, 8 U.S.C. sec. 1101(a)(43)(F), (G), which relates to a crime of violence and a theft or burglary offense respectively. The majority in Pacheco decided that the "statutory definition is explicit on its face that certain offenses punished by a one-year sentence are included [as aggravated felonies], it is neither our task to rewrite the definition of the underlying offense to eliminate the incongruity nor to ignore the clear dictates of the amended INA." Id. at 155. Thus, the majority at the outset of its opinion said: "In the case before us, we deal with the question of whether Congress can make the word 'misdemeanor' mean 'felony.' As will be seen, we hold that it can, because in this instance, we consider Congress 'to be master--that's all.'" Id. at 149. Judge Straub in his dissent reasoned that "the critical issue presented by this case is not whether Congress can make the word misdemeanor mean felony, but rather whether it actually did." Id. at 156 (internal citations, emphasis, and internal quotations marks omitted). Using plain meaning as his guide, Judge Straub discussed the ordinary and plain meaning of the words "felony" and "aggravated." He stated that, "One would never suggest, for example, that by adding the adjective 'blue' to the noun 'car,' one could be attempting to define items that are not, in the first instance, cars. . . . [W]e should presume that the specifics that follow in the definition of 'aggravated felony' under INA sec. 101(a)(43) serve to elucidate what makes these particular felonies 'aggravated'; we certainly should not presume that those specifics

would include offenses that are not felonies at all. Thus, under the majority's view, Congress has defined a subset of a category to include items that are not in the broader category itself." Id. at 157. Although Judge Straub did acknowledge the premise of the majority's position, he countered by saying, "While Congress certainly has a right to define one thing to mean something different from what it normally means, the counter-intuitive use of language in INA sec. 101(a)(43)(F) & (G) should raise red flags signaling the need for closer scrutiny." Id. at 158. He therefore concluded that "the 'linguistically unnatural' statement that 'aggravated felony' includes misdemeanors renders the term ambiguous" and then he applied the rule of lenity to decide that the statute should be construed not to include misdemeanors. Id. Guerrero advances that we should adopt the analysis of the dissent in Pacheco and find that the term aggravated felony does not include misdemeanor convictions.

While we are mindful of the harsh realities that Guerrero will face if he is deemed to be an aggravated felon, we are constrained by the structure of the statute as well as Congress' intent when it defined certain crimes as aggravated felonies to reject Guerrero's position. We will begin by addressing Guerrero's arguments, none of which are persuasive. Solorzano-Patlan, 207 F.3d 869, was a case in which we had to confront whether burglary of a vehicle, which at the time was a felony crime in Illinois, should be considered a crime of violence under 8 U.S.C. sec. 1101(a)(43)(F) ("a crime of violence . . . for which the term of imprisonment [is] at least one year"), id. at 875, and a burglary offense under 8 U.S.C. sec. 1101(a)(43)(G) ("burglary offense for which the term of imprisonment [is] at least one year"), id. at 873. Ultimately, we concluded that a burglary offense entails "unlawful entry into, or remaining in, a building or structure, with intent to commit a crime." Id. at 874. Consequently, Solorzano-Patlan's burglarizing a vehicle did not involve a building or structure and so could not fall within the meaning of burglary offense as provided for in 8 U.S.C. sec. 1101(a)(43)(G).

To illustrate the need for uniformity in defining the term "burglary," we explored what possible Indiana and Wisconsin statutes under which Solorzano-Patlan would have been convicted. This exercise allowed us to reveal how even though Illinois labels entering a vehicle a burglary, Indiana would classify this type of crime as a theft, and Wisconsin would consider Solorzano-Patlan's behavior to involve a

misdemeanor offense. Id. Pursuant to Indiana law, the INS would not have been able to deport Solorzano-Patlan for burglary because he would have been convicted of theft. Id. Likewise, in Wisconsin the crime is labeled "Entry Into a Locked Vehicle" and is a Class A misdemeanor with a punishment of "a fine not to exceed $10,000 or imprisonment not to exceed 9 months, or both." Id. (internal citations and quotation marks omitted). Thus, we said that "in Wisconsin, Solorzano-Patlan would only have been charged with a misdemeanor, and therefore he would not have been eligible for deportation." Id. Some might interpret this observation to suggest that a misdemeanor cannot be included within the purview of an aggravated felony. Such a reading would be misplaced. Earlier we had said that for a burglary offense, it is necessary to have "the term of imprisonment [be] at least one year," id. at 873 (modification added), and that the "relevant inquiry is whether the possible maximum sentence that could have been imposed is at least a year." Id. at 873 n.6. The Wisconsin crime for entry into a locked vehicle has a maximum sentence of 9 months, so by definition it would not be an aggravated felony because the maximum sentence that could be imposed could never be at least a year. We were merely demonstrating how, because of various state law definitions, the same conduct could be interpreted differently and could lead to divergent consequences for an alien. To avoid such a disparity, we concluded that it would be prudent to adopt a general definition of burglary so that a more uniform approach could be obtained. Id. at 874. In addition, we said that it was unclear whether burglarizing a car involved a "substantial risk that physical force . . . [may] be used." Id. at 876 (internal citations and quotation marks omitted). Solorzano-Patlan simply involves interpreting the limits of what comprises a burglary offense and crime of violence and not whether a misdemeanor can be an aggravated felony.

Similarly, in Xiong, 173 F.3d 601, we were faced with the task of determining whether Xiong had committed a crime of violence, 8 U.S.C. sec. 1101(a)(43)(F). Xiong had been convicted of sexual assault of a child under a Wisconsin statute, a crime classified as a felony, and sentenced to five years of imprisonment. In this particular case, we decided it was appropriate to look beyond the charging papers and this permitted us to conclude that "[i]f the IJ had considered the facts described in the complaint, he would have found that the conduct of which Xiong was convicted consisted of consensual sex between a boyfriend and his fifteen year old girlfriend," id. at 607, and did not "by its

nature, involve[ ] a substantial risk [of] physical force" and thus was not a crime of violence. Id. (internal citations and quotation marks omitted). Although the INS attempted to argue that Xiong's behavior constituted sexual abuse of a minor, we declined to address this question because it had not been initially raised before the IJ, noting that aliens have Fifth Amendment due process rights in removal proceedings: the right to notice and a meaningful chance to be heard. See id at 608. Briefing and argument on an alternative ground at the court of appeals stage is not a proper substitute for the alien's right to have a "chance to argue against the proposition" before the IJ and we therefore determined that the question of whether Xiong committed sexual abuse of a minor "is best considered by the IJ on remand." Id. Once again, we were interpreting the contours of what delineates a crime of violence in Xiong, and Guerrero was not charged as removable because he was convicted of a crime of violence, making Xiong inapplicable. Further, the issue of whether a misdemeanor can be an aggravated felony was not addressed since Xiong had been convicted of a felony.

Guerrero also relies upon Jideonwo, 224 F.3d 692, to claim, although he does not expressly couch his argument in these terms, that deporting him as an aggravated felon would violate his rights under the Due Process Clause. In Jideonwo, we dealt with a situation in which the defendant, Jideonwo, had pled guilty to one count of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. sec. 846, under the premise that he would remain eligible for a discretionary waiver of deportation under sec. 212(c) of the INA. With the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "sec.440(d) of that Act amended sec. 212(c) of the INA to make criminal aliens who had been convicted of aggravated felonies, such as the drug felony to which Jideonwo pled guilty, ineligible to receive a discretionary waiver." Id. at 695-96. We had to decide whether this Act retroactively should apply to Jideonwo; if it did, he would be ineligible for a sec. 212(c) waiver because he had been convicted of an aggravated felony, 8 U.S.C. sec. 1101(a)(43)(B). According to Jideonwo, to apply the provisions of the AEDPA's sec.440(d) retroactively would violate his rights under the Due Process Clause. Id. at 696. Because there was "significant evidence that the availability of a sec. 212(c) waiver influenced Jideonwo's decision to plead guilty," we found him eligible for such relief. Id. at 701. Our decision to reach this position rested in large part upon the particular facts of the case--that is, Jideonwo's specific reliance

on a sec. 212(c) waiver when he pled guilty and the retroactivity problem that nullified the existence of such relief. Guerrero has not provided any affirmative evidence that he pled guilty to a Class A misdemeanor in reliance upon the fact that he would not be considered an aggravated felon nor is there any issue of retroactively applying an immigration statute in Guerrero's case. Even if Guerrero had pled guilty to a misdemeanor based on the assumption that it would not be considered an aggravated felony, this type of reliance probably would not result in a due process violation because at the time there existed no explicit direction, as was the case in Jideonwo prior to the change in statute, that this Circuit would conclude a misdemeanor cannot be an aggravated felony. Therefore, Jideonwo does not support Guerrero's position.

Arguably, Guerrero's strongest argument is that we should adopt the dissent's position in Pacheco, 225 F.3d at 155-61. The difficulty with the dissent's approach is that it focuses upon the plain meaning of the term "aggravated felony," by exploring the ordinary, common sense meaning of each of these words. The statute, however, includes more than these two words: "The term 'aggravated felony' means--. . ." 8 U.S.C. sec. 1101(a)(43). The dissent does not address the word "means," and instead concentrates on the term "aggravated felony," and thus concludes that it is difficult to conceive of how a misdemeanor could be a felony, let alone an aggravated felony. While this approach to the issue is not without a certain logic, it places a heavy emphasis upon the two words--that is, aggravated and felony--without discussing the full statute in which these two words appear. Consequently, the dissent's analysis operates in a type of vacuum, and as a result, does not grapple with either the structure and context of the complete statute or Congress' intent when it enacted the aggravated felony provision, 8 U.S.C. sec. 1227(a)(2)(A)(iii), and its attendant meaning, 8 U.S.C. sec. 1101(a)(43).

Whether an Illinois Class A Misdemeanor for criminal sexual abuse can constitute an aggravated felony under the rubric of sexual abuse of a minor is a question of first impression for this Circuit. We are mindful that several other circuits have addressed a similar issue with regard to a crime of violence, 8 U.S.C. sec. 1101(a)(43)(F), and theft or burglary offense, 8 U.S.C. sec. 1101(a)(43)(G). See United States v. Christopher, No. 00-10899, 2001 WL 50343 (11th Cir. Jan. 22, 2001) (misdemeanor theft offense); Wireko v. Reno, 211 F.3d 833 (4th Cir. 2000) (misdemeanor crime of violence); Pacheco, 225 F.3d 148 (misdemeanor theft or

burglary offense/crime of violence); United States v. Graham, 169 F.3d 787 (3d Cir. 1999) (misdemeanor theft offense). However, none of these cases directly address whether a misdemeanor conviction for sexual abuse of a minor can be an aggravated felony./3 Our task is to deal with the term "aggravated felony."

We begin by noting that Congress has extensive control over the admission of aliens into the United States. This authority stems from the constitutional grant of power to Congress to "establish an uniform Rule of Naturalization." Art. I., sec. 8, cl. 4. Almost a half-century ago, the Supreme Court recognized the principle "that the formulation of these policies [that is, policies concerning the entry of aliens and their right to remain here] is entrusted exclusively to Congress has become about as firmly imbedded in the legislative and judicial tissues of our body politic as any aspect of our government." Galvan v. Press, 347 U.S. 522, 531 (1954). "Drawing upon this power, upon its plenary authority with respect to foreign relations and international commerce, and upon the inherent power of a sovereign to close its borders, Congress has developed a complex scheme governing admission to our Nation and status within our borders." Plyler v. Doe, 457 U.S. 202, 225 (1982). Thus, we must respect that "over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." Fiallo v. Bell, 430 U.S. 787, 792 (1977) (internal citations and quotation marks omitted).

The question before us arises out of the "complex scheme" that Congress has created to address the challenging policy questions that arise with respect to aliens within our country. Doe, 457 U.S. at 225. The structure Congress has implemented requires that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. sec. 1227(a)(2)(A)(iii) (emphasis added). In theory, one need not ponder about the meaning of aggravated felony, as Congress has provided us with a list, aggravated felonies A through U, indicating what falls within this term. See 8 U.S.C. sec. 1101(a)(43). Nonetheless, this is the very question that we must address--did Congress actually provide us with the meaning of "aggravated felony"? We can begin to answer this query by examining how the meaning of aggravated felony has evolved over time. Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L.No. 104-208 ("IIRIRA"), which made amendments to the INA, and significantly expanded the immigration consequences for an alien who has committed past criminal conduct. See United States v. Corona-

Sanchez, 234 F.3d 449, 454 (9th Cir. 2000). If one were to compare the prior list of aggravated felonies to the 1996 version, it would be immediately clear that Congress not only increased the type of crimes covered within this category, but also widened the scope of the crimes previously contained within this section of the statute. Id.; see 8 U.S.C. sec. 1101(a)(43) (1994) and 8 U.S.C. sec. 1101(a)(43) (Supp. 1996). This expansion has important implications for the issue raised in this case because the list of aggravated felonies, 8 U.S.C. sec. 1101(a)(43)(A), prior to the 1996 changes covered only murder. With the enactment of IIRIRA, this very same section now reads: "(A) murder, rape, or sexual abuse of a minor." See 8 U.S.C. sec. 1101(a)(43)(A) (Supp. 1996). A House Report specifically commented upon the addition of the latter two crimes: "This section amends INA section 101(a)(43) (as amended by section 440(e) of the AEDPA (Public Law 104-132)), the definition of 'aggravated felony,' by: adding crimes of rape and sexual abuse of a minor. . . ." H.R. Conf. Rep. No. 104-828, 104th Cong., 2d Sess., at 494 (Sept. 24, 1996). In the same Report, there is mention of the consequences of including sexual abuse of a minor as an aggravated felony: "This section amends INA section 241(a)(2) (prior to redesignation as section 237(a)(2)) to provide that an alien convicted of crimes of domestic violence, stalking, or child abuse is deportable. The crimes of rape and sexual abuse of a minor are elsewhere classified as aggravated felonies under INA section 101(a)(43), thus making aliens convicted of those crimes deportable and ineligible for most forms of immigration benefits or relief from deportation." Id. at 505-06. Hence, the enlargement of part (A) of 8 U.S.C. sec. 1101(a)(43) is discernible both from comparing the current and former verison of the statute as well as from the legislative history. Congress decided to broaden 8 U.S.C. sec. 1101(a)(43)(A) from just murder to include rape and sexual abuse of a minor, implicitly signaling that it felt both of these latter two crimes were of similar severity and import. Murder and rape are widely recognized as felony crimes. Thus, grouping sexual abuse of a minor with these two acts, without explicitly limiting sexual abuse of a minor to the status of a misdemeanor, is a fairly strong indication, albeit a limited one because of the lack of definite legislative commentary on the subject, that Congress intended both misdemeanor and felony convictions for sexual abuse of a minor to be considered aggravated felonies.

The structure of 8 U.S.C. sec. 1101(a)(43) reveals a desire on Congress' part not to limit

aggravated felonies to only felony convictions. Congress announced that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. sec. 1227(a)(2)(A)(iii) (emphasis added). The critical term in this section of the statute is "aggravated felony" and Congress could have decided not to define this term, as it chose not to do so with regard to the term moral turpitude. However, rather than leave the question of what constitutes an aggravated felony open-ended, Congress said, "The term 'aggravated felony' means--. . ." and proceeded to list what crimes would be considered aggravated felonies. It is important to note that the term aggravated felony is placed within quotation marks and Congress then used the word "means" after this term. What is evident from the setting aside of aggravated felony with quotation marks and the use of the term "means" is that 8 U.S.C. sec. 1101(a)(43) serves as a definition section. As a consequence, Congress had the option to use a variety of terms to reach the crimes listed within sec. 1101(a)(43). It could have substituted the term "aggravated felony" for a myriad of phrases, including: (1) aggravated offense, see Graham, 169 F.3d at 792; (2) bad acts; and (3) aggravated crimes. Although this list is hypothetical, it exemplifies that Congress had the discretion to use whatever term it pleased and define the term as it deemed appropriate. See Stenberg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 2615 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."); Meese v. Keene, 481 U.S. 465, 484 (1987) ("Congress' use of the term 'political propaganda' does not lead us to suspend the respect we normally owe to the Legislature's power to define the terms that it uses in legislation."). The statute functions like a dictionary, in that it provides us with Congress' definition of the term "aggravated felony." See Stenberg, 120 S.Ct. at 2615 ("That is to say, the statute, read as a whole, leads the reader to a definition.") (internal citations and quotation marks omitted). There is no explicit provision in the statute directing that the term "aggravated felony" is limited only to felony crimes. See Colautti v. Franklin, 439 U.S. 379, 393 n.10 (1979) ("As a rule, [a] definition which declares what a term 'means' . . . excludes any meaning that is not stated.") (internal citations and quotation marks omitted). We therefore are constrained to conclude that Congress, since it did not specifically articulate that aggravated felonies cannot be misdemeanors, intended to have the term aggravated felony apply to the broad range of crimes listed in the statute, even if these include misdemeanors.

Considering the broad authority that Congress has over immigration, we are compelled to acknowledge and implement its will. However, this does not preclude us from underscoring the need to carefully draft legislation that has crucial importance to the lives of aliens, many of whom are lawful permanent resident noncitizens in this country. We readily acknowledge the harsh consequences that can flow from including misdemeanors as aggravated felonies. An aggravated felony conviction causes an alien to be ineligible for most forms of discretionary relief, see INA sec. 208(b)(2)(B)(i), 8 U.S.C. sec. 1158(b)(2)(B)(i) (asylum); INA sec. 240A(a)(3), 8 U.S.C. sec. 1229b(a)(3) (cancellation of removal); and INA sec. 240B(a)(1) & (b)(1)(C), 8 U.S.C. sec. 1229c(a)(1) & (b)(1)(C) (voluntary departure), and such an alien may not reenter the United States without the Attorney General's consent to apply for readmission. See INA sec. 212(a)(9)(A)(i), 8 U.S.C. sec. 1182(a)(9)(A)(i)-(iii). Also, an alien who has been admitted to the United States as a lawfully admitted permanent resident and has been convicted of an aggravated felony is not eligible for a waiver. See sec. 212(h) of the INA, 8 U.S.C. sec. 1182(h). See generally 6 Charles Gordon Et Al., Immigration Law and Procedure sec. 71.05[2][c] (rev. ed. 1998) (discussing the provisions and restrictions relating to aggravated felons). However, any unease with the policy implications of the statute in question are matters within the province of Congress and not the judicial branch.

Conclusion

For the foregoing reasons, we Affirm the BIA's decision regarding Guerrero's petition for review.

/1 During the immigration hearing, the petitioner identified himself as Jose Guerrero. We therefore will refer to him as Guerrero rather than Guerrero-Perez.

/2 Guerrero raised the following additional claims that are without merit: (1) The INS failed to establish Guerrero's alienage and removability. The government submitted a copy of Record of Deportable Alien (Form I-213), which is considered a reliable document. See In re Ponce-Hernandez, Interim Decision 3397 (BIA 1999). Further, when the name on the Service's Form I-213 is identical to the respondent's name, in the absence of a denial, we can infer that the record describes the respondent. See Matter of Ramirez-

Sanchez, Interim Decision 2820 (BIA 1980). Guerrero has not presented any evidence that the Form-213 does not concern him. Therefore, the Service has established Guerrero's removability by clear, unequivocal, and convincing evidence. (2) The record presented regarding his criminal sexual abuse conviction was not properly established. See Matter of Lopez, Interim Decision 2346 (BIA 1975). (3) The IJ erred in drawing a negative inference from his failure to testify. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1043-44 (1984). (4) Removal from the United States constitutes cruel and unusual punishment. See Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 491 (1999); United States ex rel. Circella v. Sahli, 216 F.2d 33, 40 (7th Cir. 1954); Carlson v. Landon, 342 U.S. 524, 537 (1952); and Fong Yue Ting v. United States, 149 U.S. 698, 730 (1893). (5) His right to due process was violated because the IJ, who conducted his removal proceeding, also held his bond hearing and therefore should have recused himself. Guerrero has not provided any evidence that the IJ improperly relied on information gained at the bond hearing to render his decision at the removal proceeding nor does the relevant INS regulation, 8 C.F.R. sec. 3.15(d), specifically articulate that an IJ who conducts an alien's bond hearing cannot conduct the alien's removal proceeding. To successfully make out a due process claim, one has to demonstrate actual prejudice, which Guerrero has not. See Mojsilovic v. INS, 156 F.3d 743, 749 (7th Cir. 1998). (6) His due process rights were violated because he was handcuffed during his removal hearing. See United States v. Pallais, 921 F.2d 684, 686 (7th Cir. 1990), discussing how physical restraints of a defendant in the courtroom is not favored because the sight of shackles, cuffs, and gags might leave a potentially negative impression on a jury. In a deportation hearing, the absence of a jury lessens the due process concerns that the use of physical restraints may undermine the fairness of the proceedings. And (7) Section 242(a)(2)(C) of the INA, 8 U.S.C. sec. 1252(a) (2)(C) violates the Constitution because it precludes judicial review of the actions of the executive and legislative branches. See Yang v. INS, 109 F.3d 1185, 1196-97 (7th Cir. 1997), disapproved on other grounds by Amercian-Arab Anti-Discrimination Comm., 525 U.S. 471. Further, we will not address whether Guerrero's behavior constitutes child abuse according to 8 U.S.C. sec. 1227(a)(2) (E)(i) because as discussed earlier, this issue is not dispositive in this case.

/3 We accept that Guerrero's conviction for criminal sexual abuse would be considered sexual abuse of a minor, as the term is defined in In re

Rodriguez-Rodriguez, Interim Decision 3411 (BIA 1999).