# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 23, 2013

No. 13-10473

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

EFRAIN HERNANDEZ RAMIREZ,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

KING, Circuit Judge.

Efrain Hernandez Ramirez pled guilty to one count of illegal reentry following removal and at his sentencing, the district court applied an eight-level enhancement based on a prior conviction for an aggravated felony. The aggravated felony in question was a New York state misdemeanor conviction for third-degree sexual abuse of a fifteen-year-old girl. Ramirez appeals, arguing that his misdemeanor conviction cannot be an aggravated felony. For the following reasons, we AFFIRM.

## I. Factual and Procedural Background

Efrain Hernandez Ramirez is a Mexican citizen, and he was removed from the United States in March 2004, and again in March 2009. He returned to the

No. 13-10473

United States several months after his second removal.  On October 10, 2012, the government indicted Ramirez on one count of illegal reentry following removal from the United States, in violation of  8 U.S.C. § 1326(a) and (b)(2). Ramirez pled guilty without a plea agreement and stipulated that he was found in the United States without official permission after a prior removal.

During the sentencing process, issues arose concerning his 2004 misdemeanor conviction in New York for third-degree sexual abuse, which carried a maximum penalty of three months' imprisonment.  According to Ramirez's presentence report ("PSR"), police reports indicated that the conviction was based on Ramirez's apparently consensual sexual intercourse with a fifteen-year-old female when he was twenty-four.  Although the PSR included the sexual abuse conviction in its calculation of his criminal history category, it did not factor the conviction into his offense level.

The government objected to the PSR, arguing that Ramirez's prior conviction for third-degree sexual abuse should be classified as an aggravated felony pursuant to § 2L1.2(b)(1)(C) of the United States Sentencing Guidelines Manual ("the Guidelines"), its associated application notes, and the application of the modified categorical approach.  The probation officer accepted the government's objection and amended Ramirez's PSR.  Instead of a final offense level of six, as had been assigned in the original PSR, the PSR increased his offense level to fourteen.  The advisory Guidelines range for Ramirez increased from between two and eight months' imprisonment, to between twenty-one and twenty-seven months' imprisonment.

During the sentencing hearing, Ramirez objected to the probation officer's conclusion that his prior New York conviction qualified as an aggravated felony. He asserted that because the conviction was for a misdemeanor, it could not qualify as an aggravated felony.  Relying on *United States v. Galvez*, 102 F. App'x 425 (5th Cir. 2004) (unpublished) (per curiam), and *United States v. Urias-*

No. 13-10473

*Escobar*, 281 F.3d 165 (5th Cir. 2002), the district court rejected Ramirez's argument, and applied the enhancement. It also granted Ramirez a downward variance of one level for acceptance of responsibility, resulting in a Guidelines advisory range of eighteen to twenty-four months. Given Ramirez's violent history, the court ultimately imposed a sentence of twenty-two months. Ramirez now appeals.

## II. Standard of Review

The district court's legal interpretation of the United States Sentencing Guidelines is a question of law and is reviewed de novo. *United States v. Moore*, 708 F.3d 639, 645 (5th Cir. 2013).

## III. Discussion

When the district court sentenced Ramirez for illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and (b)(2), it properly consulted § 2L1.2 of the Guidelines. *See* U.S.S.G. § 2L1.2, cmt. Under § 2L1.2, the base level for the offense of illegal reentry is eight points, and it recommends an eight-level enhancement when the defendant has a conviction for an aggravated felony. *Id.* at § 2L1.2(a). The commentary for this section defines both "felony" and "aggravated felony." Whereas a felony is any offense punishable by imprisonment for a term exceeding a year, *see id.* § 2L1.2 cmt. n.2, the definition of aggravated felony provides no durational limitation, *see id.* § 2L1.2 cmt. n.3. Instead, the Guidelines adopt the definition provided in 8 U.S.C. § 1101(a)(43). *Id.* Under this statute, an aggravated felony includes "murder, rape, or sexual abuse of a minor." *See* 8 U.S.C. § 1101(a)(43)(A).

The district court concluded that Ramirez was eligible for the eight-level enhancement for an aggravated felony based on his 2004 New York conviction of third-degree sexual abuse, a class B misdemeanor. Under New York law,

> A person is guilty of sexual abuse in the third degree when he or she subjects another person to sexual contact without the latter's

3

consent; except that in any prosecution under this section, it is an affirmative defense that (a) such other person's lack of consent was due solely to incapacity to consent by reason of being less than seventeen years old, and (b) such other person was more than fourteen years old, and (c) the defendant was less than five years older than such other person.

N.Y. Penal Law § 130.55 (Consol. 2013). New York law also defines lack of consent, in part, as the incapacity to consent because the victim is less than seventeen years old. *Id.* §§ 130.05(2)(b) & (3)(a).

When the government alleges that a prior state conviction constitutes an aggravated felony, the Supreme Court has instructed courts to employ a "categorical approach" to determine whether the state offense is comparable to an offense listed in the statute. *Moncrieffe v. Holder*,--- U.S. ---, 133 S. Ct. 1678, 1684 (2013). "Under this approach, we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Id.* (citations and internal quotation marks omitted). If the statute at issue is divisible, or defines multiple offenses, *see* Black's Law Dictionary 1186 (9th ed. 2009), and at least one of the offenses included in the statute is not an aggravated felony, the court is to apply a "modified categorical approach." *See Larin-Ulloa v. Gonzales*, 462 F.3d 456, 464 (5th Cir. 2006). This approach permits a limited inquiry into the charging documents to determine which statutory variant of the crime was committed. *Id.*; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005); *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012).

Ramirez's reply brief argues that New York's third-degree sexual abuse statute is not divisible. However, lack of consent under § 130.55 may be based on several different predicates. *See* N.Y. Penal Law § 130.05. Among those predicates is the incapacity to consent because the victim is less than seventeen;

No. 13-10473

thus, one of the offenses described by the statute is sexual abuse of a minor. *See id.* §§ 130.05(2)(b) & (3)(a); *see also Ganzhi v. Holder*, 624 F.3d 23, 29–30 (2d Cir. 2010) (per curiam) (holding that a similar New York sexual misconduct statute is divisible based on § 130.05 and affirming the use of the modified categorical approach to find that the sexual misconduct conviction constituted an aggravated felony of sexual abuse of a minor). Accordingly, we apply the modified categorical approach to determine whether Ramirez's conviction satisfies the generic offense. The New York statute and the criminal information establish that his conviction was for the sexual assault of a minor. *Cf. United States v. Rodriguez*, 711 F.3d 541, 560 (5th Cir. 2013) (en banc) ("[A] statute that prohibits acts of sexual abuse against minors will comport with the generic meaning of 'minor' as long as the statute sets the age of consent below the age of majority—which we conclude to be the age of eighteen under our method."). Under this approach, Ramirez committed "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43).

The focus of Ramirez's appeal is what he characterizes as the erroneous "assumption" that he has been convicted of an underlying felony. First, Ramirez points to the plain meaning of the terms in the Guidelines as well as the structure of § 2L1.2 to argue that the interpretation of a felony to include a misdemeanor is erroneous. Recognizing that there is Fifth Circuit law that contradicts his argument, he attempts to limit the application of that law, contending it is inapplicable to the specific subsection at issue and that the case has been abrogated by revisions to the Guidelines. Finally, he asserts that recent Supreme Court jurisprudence proscribes the transformation of his misdemeanor into a felony. We disagree.

## A. Plain Meaning and Structure of the Guidelines

Ramirez maintains that for a prior conviction to constitute an aggravated felony, the prior conviction must actually be a felony. Under this logic, his

*misdemeanor* conviction cannot be considered an aggravated *felony*. While his argument is seemingly persuasive in its simplicity, every circuit court to have considered whether a misdemeanor conviction can constitute an aggravated felony for purposes of § 1101(a)(43), including our court, has held the contrary. *See United States v. Urias-Escobar,* 281 F.3d 165, 167 (5th Cir. 2002); *see also United States v. Gonzalez-Tamariz*, 310 F.3d 1168, 1170–71 (9th Cir. 2002); *United States v. Saenz-Mendoza*, 287 F.3d 1011, 1014 (10th Cir. 2002); *Guerrero-Perez v. INS*, 242 F.3d 727, 736 (7th Cir. 2001); *United States v. Christopher*, 239 F.3d 1191, 1193 (11th Cir. 2001); *United States v. Gonzales-Vela*, 276 F.3d 763, 768 (6th Cir. 2001); *United States v. Pacheco*, 225 F.3d 148, 153–154 (2d Cir. 2000); *Wireko v. Reno,* 211 F.3d 833, 835 (4th Cir. 2000); *United States v. Graham*, 169 F.3d 787, 792–93 (3d Cir. 1999); *cf. United States v. Cordoza-Estrada*, 385 F.3d 56, 58 (1st Cir. 2004) (per curiam) ("We agree . . . that the statutory definition of the term 'aggravated felony' in § 1101(a)(43) is a term of art that includes within its ambit certain misdemeanors under state law that carry a sentence of at least one year.").[1]

In addition to differentiating between the literal meaning of the terms, Ramirez maintains that construing a misdemeanor as a felony is inconsistent with the graduated structure of the Guidelines. Aggravated felonies are not the only offenses that warrant an enhancement under § 2L1.2. For example,

---

[1] The First Circuit relied on other circuits in crafting its holding, including ours, and these circuits held generally that a misdemeanor could constitute an aggravated felony. *Cordoza-Estrada*, 385 F.3d at 58. However, the First Circuit included durational language in its holding despite the fact that the cases on which it relied had not done so. *Id.* Irrespective of this durational language, the court's analysis still focuses on "whether the crime meets the explicit definition of 'aggravated felony' under § 1101(a)(43)(F)." *Id.* In *Cordoza-Estrada*, the durational language was included in the statute at issue. *Id.* Ramirez has not expressly argued that his misdemeanor conviction should not be considered a felony because the maximum term of imprisonment for this offense is less than one year. He touches upon this issue, though, in his interpretation of Fifth Circuit precedent, *Urias-Escobar*, which will be discussed below.

convictions for felonies related to drug trafficking, crimes of violence, or firearms offenses receive a sixteen-level enhancement, *see* U.S.S.G. § 2L1.2(b)(1)(A); convictions for a felony not otherwise specified in the statute receive a four-level enhancement, *id.* § 2L1.2(b)(1)(D); and three or more misdemeanor convictions for crimes of violence or drug trafficking offenses receive a four-level enhancement, *id.* § 2L1.2(b)(1)(E). Based on this progressive schedule of enhancements, Ramirez argues that the Sentencing Commission could not have intended to assign a one-time misdemeanant, such as himself, more offense-level points than would be assigned to a three-time misdeamenant under § 2L1.2(b)(1)(E).

It appears as if this is precisely what the Sentencing Commission intended. By relying on a long list of offenses to define "aggravated felony," the Sentencing Commission intended to treat certain types of one-time misdemeanants differently than three-time misdemeanants based on the nature of the underlying offenses. This is not just the case for enhancements based on aggravated felonies. The Guidelines also assign a four-level enhancement for all other felonies, where "felony" is defined as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." U.S.S.G. § 2L1.2, cmt. n.2. This catch-all provision is broad and includes crimes charged as both felonies and misdemeanors. Surely the Commission realized that a one-time misdemeanant convicted of an offense punishable by a term of thirteen months' imprisonment would be treated differently, i.e., as a felon, than a misdemeanant convicted of two crimes, each only punishable by a maximum of eleven months. To suggest that the Sentencing Commission did not intend to treat different types of misdemeanors differently is to ignore the clear language of the Guidelines.

To a degree, Ramirez's plain meaning and structural arguments are counter-productive. The plain meaning of § 1101(a)(43)(A) is that murder, rape,

or sexual abuse of a minor constitutes an aggravated felony. The statute uses generic offenses and does not specify classes of crimes or a durational requirement. By contrast, other subsections of the same statute do specify whether the offense must be a felony or a misdemeanor with a minimum term of imprisonment. *See, e.g*, 8 U.S.C. § 1101(a)(43)(F) ("a crime of violence . . . for which the term of imprisonment [is] at least one year."); *id.* § 1101(a)(43)(G) ("a theft offense . . . or burglary offense for which the term of imprisonment is at least one year."); *id.* § 1101(a)(43)(T) ("an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed."). We can infer that Congress is capable of limiting and tailoring the enumerated offenses in order to identify which constitute aggravated felonies since it has done precisely that. By merely listing three crimes in subsection (A), "murder, rape, and sexual abuse of a minor," without limitation, Congress meant to encompass all manner of charged crimes, misdemeanor or felony, that fit within these generic offenses.

## B. *United States v. Urias-Escobar* **Applies**

In *Urias-Escobar,* we held that a prior misdemeanor conviction could be an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), which is a "a crime of violence . . . for which the term of imprisonment [is] at least one year." 281 F.3d 165, 167 (quotation marks, citation, and footnote omitted) (alteration in original). We explained that "[i]n defining 'aggravated felony,' Congress was defining a term of art, one that includes all violent crimes punishable by one year's imprisonment, including certain violent misdemeanors." *Id.*

Ramirez attempts to limit the holding of *Urias-Escobar*, and contends that the inclusion of the "at least one year" language in § 1101(a)(43)(F) was critical to its analysis and that our holding in *Urias-Escobar* should likewise be limited to only cases involving subsection (F). While the court clearly references the

durational language included in subsection (F), this reference was not meant to limit the holding, but to emphasize the importance of deference to Congress. The court explained that the language in § 1101(a)(43)(F) does not comport with the traditional understanding that a felony is any crime punishable by *more* than one year's imprisonment. *Id.* at 167–68. Despite the discrepancy between the statute and the common understanding of the term, because "Congress has the power to define the punishment for the crime of reentering the country after deportation," the court must apply that definition as articulated by Congress. *Id.* at 167 (quoting *Graham*, 169 F.3d at 792 (3d Cir. 1999)).

The limiting language in subsection (F) was not the focus of the legal inquiry before us in *Urias-Escobar*; moreover, Urias-Escobar asserted the same arguments as Ramirez, claiming "that because he was convicted of only *misdemeanor* assault, that offense cannot, by definition, be an aggravated *felony* under § 2L1.2." *Id.* at 167. We disagreed in a similarly broad fashion. *Id.* at 168. In fact, *Urias-Escobar* cites several other circuits in support of its conclusion, including one from the Seventh Circuit that considered the very matter at issue here—whether a state conviction for misdemeanor sexual abuse of a minor is an aggravated felony under 8 U.S.C. § 1101(a)(43)(A). *Id.* at 167 n.5 (citing *Guerrero-Perez v. INS*, 242 F.3d 727 (7th Cir. 2001), *aff'd on reh'g*, 256 F.3d 546 (holding that the defendant's Illinois misdemeanor conviction for sexual abuse of a fifteen-year-old girl when he was nineteen constituted an aggravated felony)). While we did not provide a detailed analysis of *Guerrero-Perez*, our favorable citation, although not controlling, severely undermines Ramirez's attempt to bar *Urias-Escobar*'s application here.

Finally, we applied *Urias-Escobar* in an unpublished disposition affirming the application of the aggravated felony enhancement based upon a prior state misdemeanor conviction for "sexual abuse of a person under fourteen." *Galvez*, 102 F. App'x at 426. Ramirez attacks *Galvez* as inapplicable since the case is

unpublished and contains little analysis. *Galvez* has no precedential value, but it is not irrelevant. It is an indication that this court plainly meant to apply *Urias-Escobar* to aid in the interpretation of all of the "aggravated felonies" enumerated in § 1101(a)(43) and not limit its holding to the sub-category of aggravated felonies comprising crimes of violence.

Prepared for the possibility that we would reject his proposed limitations to *Urias-Escobar*, Ramirez alternatively argues that the case is no longer applicable because of amendments to the Guidelines following our decision. When *Urias-Escobar* was decided, the Guidelines permitted only two possible enhancements for individuals convicted of illegal reentry: a sixteen-level increase for a prior aggravated felony conviction, and a four-level increase for any other felonies or three misdemeanor convictions. Since that time, the Guidelines have expanded, and as discussed above, there are now four possible enhancements available for different categories of prior convictions. Ramirez again contends that had the Sentencing Commission intended for the Guidelines' aggravated felony provision to include misdemeanor convictions, then it would not have included § 2L1.2(b)(1)(E), which recommends enhancements for three or more misdemeanor convictions for crimes of violence or drug-trafficking. He suggests that if we apply *Urias-Escobar* to the present matter and accept that his misdemeanor conviction for sexual abuse meets the definition of aggravated felony, this will functionally abrogate subsection (E) of the Guidelines.

For the reasons already mentioned, the amendments do not prevent us from applying *Urias-Escobar* here. Ramirez's argument assumes that all misdemeanors should be more or less equal for the purposes of sentencing, but this contradicts the clear design of the Guidelines.

No. 13-10473

## C. *Carachuri-Rosendo v. Holder* and *Moncrieffe v. Holder*

Finally, Ramirez argues that the Supreme Court's recent decisions in *Carachuri-Rosendo v. Holder* and *Moncrieffe v. Holder*[2] prohibit the eight-level enhancement for his misdemeanor conviction. Focusing on the Court's repeated instructions to employ common sense, he contends that the underlying sentiment in both cases suggest a prohibition against the transformation of a misdemeanor into a felony at sentencing. Since the factual and legal issues presented in *Carachuri-Rosendo* and *Moncrieffe* are distinguishable, neither disturbs our holding in *Urias-Escobar*.

In *Carachuri-Rosendo*, the Court considered whether a drug possession misdemeanor constituted an aggravated felony for the purposes of a removal proceeding. *See* --- U.S. ---, 130 S. Ct. 2577, 2578 (2010). The petitioner was an undocumented alien and he had been convicted of two separate drug possession misdemeanors in Texas. *Id.* at 2580. Under the Immigration and Nationality Act, a lawful permanent resident of the United States may request discretionary relief that cancels the removal proceedings so long as, *inter alia*, he has not been convicted of an aggravated felony. *Id.* at 2580–81 (citing 8 U.S.C. 1229b(a)(3)). The petitioner sought such relief, but the government objected on the grounds that his second misdemeanor drug conviction constituted an aggravated felony within the meaning of the statute. *Id.* at 2582.

The alleged aggravated felony at issue was "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18)." *Id.* at 2581 (citing 8 U.S.C. § 1101(a)(43)(B)) (alteration in

---

[2] Ramirez did not raise *Moncrieffe* in his briefs. He presented the case for the first time in a letter to the court following oral argument in support of his theory that the expansion of *Urias-Escobar* to cover aggravated felonies based on sexual abuse of a minor would create ambiguity in the Guidelines. In the letter, he also relied on the case as support for the fact that words should be given their "proper" meaning, e.g. that a misdemeanor is not a felony. Although we need not consider this as a separate argument, we will discuss this case for the sake of clarity.

11

original).  The statute further defines a drug trafficking crime as any felony punishable under the Controlled Substances Act ("CSA"), and a felony under the CSA is a crime for which the maximum term of imprisonment authorized is more than one year.  *Id.* (citing 18 U.S.C. §§ 924(c)(2), 3559(a)).  Thus, if the defendant had been convicted of an offense that would be punishable under the CSA by more than a year's imprisonment, then he would have committed an aggravated felony for the purposes of the removal proceedings.

When the petitioner was convicted of his second misdemeanor in Texas, the fact of his prior conviction was not charged or proven.  *Id.* at 2583.  As a result, his second conviction, as charged, would not have been a felony under the CSA.  Nevertheless, the government argued that the petitioner's second conviction qualified as an aggravated felony because if he *had been* prosecuted in federal court, he *could have been* punished by a sentence of up to two years due to do his prior conviction.  *Id.* at 2582.  The Court disagreed, holding that since the state had not actually charged the existence of a prior conviction, he was not "*actually convicted* of a crime that is itself punishable as a felony under federal law."  *Id.* at 2589 (emphasis in original).  Essentially, the Court rejected the government's attempt to modify the underlying conviction, instead requiring that the federal court only consider the state offense as charged in the state court, and no more.

Ramirez characterizes *Carachuri-Rosendo* as standing for the proposition that, for the purposes of interpreting § 1101(a)(43), a district court is bound by the manner in which the state court chooses to charge a crime.  Ramirez extrapolates that if a state court charges and convicts a person of a misdemeanor, then the federal court may not characterize that offense as a felony.  But the actual holding is not so broad.  *Carachuri-Rosendo* was not concerned with the classification of the crime under state law, which is the issue before us today.  The Court was concerned with the government's decision to

import facts into prior convictions that were never charged, thus manipulating the offense after the fact to satisfy the requirements of an aggravated felony. *Id.* at 2589. Ultimately, the outcome of *Carachuri-Rosendo* "depended upon the fact that [the defendant's] conviction did not establish the fact necessary to distinguish between misdemeanor and felony punishment under the [federal law]." *Moncrieffe*, 133 S. Ct. at 1688 n.8 (discussing *Carachuri-Rosendo*).

Here, by contrast, there is no dispute that Ramirez has been convicted of an offense that § 2L1.2(b)(1)(C) and 8 U.S.C. § 1101(a)(43) make punishable as an aggravated felony. The government has not supplemented his misdemeanor conviction with any facts that were not included when New York charged and convicted Ramirez of this crime. Ramirez's conviction establishes all of the facts necessary to identify it as sexual abuse of a minor. In short, *Carachuri-Rosendo* simply is not applicable here.

Similarly, *Moncrieffe* does not overrule *Urias-Escobar* and provides Ramirez no relief. *Moncrieffe* considered whether a Georgia conviction for possession with intent to distribute 1.3 grams of marijuana constituted the aggravated felony of a drug trafficking crime. *See* 133 S. Ct. at 1683 (citing 8 U.S.C. § 1101(a)(43)(B)). After performing the necessary statutory gymnastics, the Court concluded that the law defines an aggravated felony as a drug trafficking crime if the charged offense would be a felony under the CSA. *Id.* However, the petitioner's state conviction was peculiar in that it was a wobbler that could be charged as either a felony or a misdemeanor under the CSA. *Id.* at 1684. The legal question before the Court was whether a crime that could be both a misdemeanor and a felony under the CSA was a drug trafficking crime.

The Court applied the categorical approach and determined that the state conviction did not constitute an aggravated felony. *Id.* at 1684–87. It explained that "to satisfy the categorical approach, a state drug offense must meet two conditions: It must 'necessarily' proscribe conduct that is an offense under the

CSA, and the CSA must 'necessarily' prescribe felony punishment for that conduct." *Id.* at 1685. The CSA did not necessarily prescribe felony punishment for the prior conviction, though, since it could be punished as a misdemeanor. *Id.* at 1686.

Ramirez points to dicta in *Moncrieffe* about using common sense;[3] yet the factual and legal issues in *Moncrieffe* render it inapplicable here. *Moncrieffe* involved a situation where the aggravated felony at issue required that the underlying conviction be a felony under the CSA, but the petitioner's offense was not exclusively a felony. The Court's analysis involved the interpretation and application of a number of related statutes in order to define the contours of the aggravated felony. Here, the relevant aggravated felony is "sexual abuse of a minor." Unlike in *Moncrieffe*, which instructed the court to consult a bevy of statutes to determine the meaning of "drug trafficking," the provision at issue here does not require reference to additional statutes to determine the meaning of "sexual abuse of a minor." We need only employ common sense to determine whether the conviction amounts to such. Ramirez was convicted of sexually abusing a fifteen-year-old girl. He has committed an aggravated felony; nothing in *Moncrieffe* alters this analysis.

## IV. Conclusion

For the reasons stated above, we AFFIRM the judgment of the district court.

---

[3] *Moncrieffe* concludes with the comment that "[t]his is the third time in seven years that we have considered whether the Government has properly characterized a low-level drug offense as illicit trafficking in a controlled substance, and thus an aggravated felony. Once again we hold that the Government's approach defies the commonsense conception of these terms." 133 S. Ct. at 1693 (quoting *Carachuri-Rosendo*, 130 S. Ct. at 2577) (internal quotation marks omitted). Ramirez contends that this statement is an explicit signal from the Court that "unambiguous words" such as "misdemeanor" and "felony" be given their proper meaning.